4:17cv216

**FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**
**in the UNITED STATES DISTRICT COURT for the SOUTHERN DISTRICT of GEORGIA**

Robert Leslie Fallin

(Enter above full name of plaintiff or plaintiffs)

U. S. DISTRICT COURT
Southern District of Ga.
Filed in Office
11/6 20 17 M
TRB
Deputy Clerk

v.

Lt. Flood

Meg Heap
Margaret DeLeon et. al.

(Enter above full name of defendant or defendants)

I. Previous lawsuits

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action? Yes ✓ No ____

If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to this previous lawsuit:

Plaintiffs: Robert Leslie Fallin

Defendants: ____________

2. Court (if federal court, name the district; if state court, name the county): Under investigation by US Attorney

3. Docket number: ____________

4. Name of judge assigned to case: ____________

5. Disposition
(for example, was the case dismissed? appealed? is it still pending?):
Under investigation

6. Approximate date of filing lawsuit: ______

7. Approximate date of disposition: ______

8. Were you allowed to proceed *in forma pauperis* (without prepayment of fees)? Yes _____ No _____

B. While incarcerated or detained in any facility, have you brought any lawsuits in federal court which deal with facts other than those involved in this action? Yes _____ No ✓

If your answer to B is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1. Parties to previous lawsuit:

Plaintiffs: ______

Defendants: ______

2. Court (name the district):

______

3. Docket number: ______

4. Name of judge assigned to case: ______

5. Disposition
(for example, was the case dismissed? appealed? is it still pending?):

______

6. Approximate date of filing lawsuit: ______

7. Approximate date of disposition: ______________________

8. Were you allowed to proceed *in forma pauperis* (without prepayment of fees)? Yes _____ No _____

C. As to any lawsuit filed in federal court where you were allowed to proceed *in forma pauperis*, was any suit dismissed on the ground that it was frivolous, malicious, or failed to state a claim? Yes _____ No _____

1. If your answer to C is yes, name the court and docket number for each case:

______________________ ______________________
______________________ ______________________
______________________ ______________________
______________________ ______________________

II. Place of present confinement: Chatham County Detention Center

A. Is there a prisoner grievance procedure in this institution? Yes ✓ No ____

B. Did you present the facts relating to your complaint to the appropriate grievance committee? Yes ____ No ✓

C. If your answer to B is yes:

1. What steps did you take? ______________________

2. What was the result? ______________________

3. Did you appeal any adverse decision to the highest level possible in the administrative procedure? Yes ____ No ____

If yes, what was the result? ______________________

D. If you did not utilize the prison grievance procedure, explain why not: involves the attempted murder of me during my arrest and the subsequent cover-up by officers of the court in Chatham County

III. Parties

(In Item A below, list your name as plaintiff and current address. Provide the name and address of any additional plaintiffs on an attached sheet.)

A. Name of plaintiff: Robert Leslie Fallin
Address: Chatham County Detention Center, 1074 Carl Griffin Drive Savannah, GA 31405

(In Item B below, list the defendant's full name, position, place of employment, and current address. Provide the same information for any additional defendants in Item C below.)

B. Name of defendant: Lt. Flood
Position: Head of Police SWAT team
Place of employment: Savannah Chatham Metro Police
Current address: ______________________

C. Additional defendants: "(Head of robot team, Christopher Boyette, John Little, Daniel Kang

IV. Statement of Claim

State here as briefly as possible the FACTS in your case. Describe how each defendant is personally involved in the depriving you of your rights. You must include relevant times, dates, places, and names of witnesses. DO NOT GIVE LEGAL ARGUMENTS OR CITE ANY CASES OR STATUTES. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

3 Savannah Chatham Metro Police responded to my wife Millie Fallin's 911 call. Millie told them that she was afraid to go home because she and I had an argument, and that I had threatened to kill her and the police. She told them I was sleeping, but that I had a loaded shotgun by the bed. Police took no security precautions and came over to my ~~open front~~ partially open front door. ~~Thinki~~ Something woke me up and removed my CPAP mask, which prevents me from hearing all but the very loudest sounds. I called for Millie through the partially shut bedroom door, but heard no response. At that time I saw ~~a~~ RF my front door was partially open, ~~saturp~~ RF

V. Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

I want a full investigation by the ~~US Attorney~~ RF FBI and the Georgia Bureau of Investigation, including all evidence collected for my trial, both presented and non-presented. I want those who tried to murder me and those whose covered it up, including all perjuries, prosecuted to the full extent of the law. NOTE: My cell phone contain's Lt. Flood's personal cell phone number. I want it documented then returned to me immediately. I also want an investigation of the incidends with Mr. Johnson at the jail.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 1 day of November, ~~19~~ 2017 RF 2017.

Prisoner No. (P1602037) 2016020212

Robert L. Tall
(Signature of Plaintiff)

1

1983

~~Rte~~ Peering through shut blinds, I saw a man, upper torso, dressed in a ~~ra~~ yellow-green rain jacket with no visible markings, as all I could see was the left sleeve. Since my wife never leaves the door unlocked, much less open, I thought she had complained to her bar buddies at Rachel's 1190 that I had hit her lightly on the head and ~~she~~ accidentally, on the shoulder after ~~d~~ she threatened to tell police I hit her when I had not touched her, then ~~screa~~ yelled, "He hit me!" loud enough for neighbors to hear. I kept the loaded shotgun next to the bed after Millie called the police a few years earlier and claimed someone had come to our porch and pointed a gun at her. In any event, I saw the would be intruder

push the door further open after I went over to pick up the shotgun. I did not realize until then the man at the door was a police officer, as I saw "Police" on the back of his rain jacket as he and two other police officers ran. I lowered then put down the shotgun, went to the front door, unarmed and making no attempt to conceal myself, examined the front door, waited for police to call, then shut and locked the front door and went back to sleep. Rather than keep my apartment under surveillance (so they would have seen me at the front door), the officers called in a S.W.A.T. team. While I slept, the

S.W.A.T. team position a small robot outside my front door. The robot had an arm and a video camera. Also, during ~~in~~ the time I had brandished the shotgun, I must have popped the window shade as it was open. So the robot and S.W.A.T. team had a clear view that I was asleep and not a threat, should officers have approached my window and arrested me at gunpoint. Instead, I awake and pull off my CPAP mask to the sound of a bullhorn and the sight of a ~~bomb~~ tracked robot with a video camera. I was irate. I initially refused to come out because of the unreasonable force being used, as I feared I would be injured or worse. However after less than two minutes

1983

of negotiating, the RF small robot smashed my window, pelting me with glass. I screamed a protest, which was not presented in court (nor was the robot video), and the robot began battering at my front door. Panicking, I picked up the shotgun, unloading it into the robot. I then threw a can of bacon grease onto the robot treads to foul them, in case the robot was not completely dead. But it did not move. I then laid back down, put on my mask and went back to sleep. Rather than arrest me, those who removed the robot let me sleep, even though I was now readily accessable through the broken window.

Once again, I awoke

[1983]



to the bull horn. Taking off my mask, I screamed at the negotiator about how the robot had smashed my window. However, after about one minute, I agreed to get on the house phone. However, just as I made contact with the negotiator, the S.W.A.T. team began firing C.S. tear gas into my apartment. ~~I RA~~ Furious, I disconnected the phone and went back and lay on the bed. Before I could put on my mask, a ferret round passed about 1 1/2 inches from my ~~ad~~ RF abdomen. I calmly went to the bathroom, wiped my face with a wet towel put on my CPAP mask and went to sleep.

By their own admission, S.W.A.T. inserted enough CS tear gas to kill me many times over. Since

CS tear gas is also flammable, the SWAT team could, conceivably, burn down the building or a large portion of the apartment complex.

I slept until the police shut off power to my apartment. As I removed my mask, I began hearing what I thought was lethal small arms. I gathered weapons and fired into the ground approximately 3 feet beyond ~~my~~ RE the sidewalk in front of my apartment, but clearing the bushes. This was suppression fire, because I did not want anyone hurt while trying to rush my apartment. Likewise, I used taunting to encourage extreme caution. However, while executing suppression fire, I made no attempt to conceal myself. Yet, sharpshooters never ~~targe~~ RE shot me.

I was confused and disheartened; as I

1983

7

believed I had done everything possible to delay arrest until cooler heads prevailed, so I could avoid losing my life. Finally, I ~~choos~~ chose suicide by cutting my brackeal arteries with a 6" butcher knife. I chose this form of suicide because I thought I would have more control of my death. However, I decided it took more courage to live than to die. But, before I could put away the knife, a large police robot broke through my front door and started approaching me. I sensed danger, and I began cutting wires on the robot. Turns out, the robot was equipped with a shotgun shell

to blow off my face and an explosive charge "to breach the door", Since the small robot could have breached the door, the 500 pound large robot certainly could. Thus, the purpose of the explosive charge was to cover up the evidence that I had been murdered by the shotgun shell. The raid was illegal; the S.W.A.T. team commander knew it; and, had I surrendared any time earlier in the raid, I would have been "accidentally" shot. Clearly, the District Attorney's office realized the raid was an illegal "home invasion". Thus, the D.A. and prosecutor used every effort to deny me Veteran's Court. This included enlisting Dr. Jennifer Rohrer in denying I had previously-

1983

undiagnosed PTSD. ~~#~~RF For this, she likely conspired with Superior Court Judge Penny Freesemann. ~~a~~ Superior Court Judge Timothy Warmsley also likely conspired dragging my wife Millie's ~~sanit~~RF psychological evaluation until after I was convicted. ~~Ja~~ Judge Warmsley also illegally ordered ~~my~~ Georgia Heritage Credit Union to dispense funds from my personal savings account (not a joint account). Sheriff John Wilcher's deputies delivered protective orders which stripped me of my income without due process. Not ~~sup~~ RF surprising, as this case could involve a huge lawsuit arrest of law enforcement, the D.A.'s office and Superior court judges. Damages to Chatham

1983

County revenue could ran into the hundreds of millions.

- - - - - - -

Sheriff Wilcher used a "separation form" to "legally" remove the bunker, who died under mysterious circumstances ("apparent suicide") in ~~20~~ RF the Fall of 2016. He also almost succeeded with me, on Oct 28, 2017. I had been moved after over a week alone, into a room with a roommate who intimidated me over my snoring. Had I insisted I be moved Corporal Metler said he would have to fill out ~~of~~ RF a "separation form" and BOTH of us would have been moved OUT of the Veteran's pod, even though I was the victim. Outside the Veteran's pod, I would have ~~to~~ probably been found "an apparent suicide."

11

198

Cpl. Metzler,

"While I would like to move to another room, if possible, because of the incidents that occured last night, I am more concerned that David Jackson was standing near Officer Morrel when I told him about my concerns about my roommate, and I asked for his advice, I placed a counselor request for advice."

The incident I described above began on Thursday. My roomate first complained about my card shuffling for the first time several days after I entered the room. This was in the middle of the day, but my roommate, Mr. Johnson, sleeps most of the time. He has sleep apnea, as do I, and snores loudly, as do I. However, while I have never complained about his snoring, on Friday in the late afternoon, in an angry voice, Mr. John ordered me to turn on my side and said I belonged in a single room in 1D, the mental area

(over)

of the jail. I reported this to Officer Morrel and asked for his advice. Officer Morrel suggested I contact the counselor. However, another inmate overheard my conversation and told Mr. Johnson I was trying to get him thrown out of the dorm. Saturday morning about 2AM, Mr. Johnson ~~w~~rapped his can so hard against the wall of the cell, he woke me from a sound sleep; and I did not go back to sleep all night. I ~~rea~~ reported this to officer Morrel. Mr. Johnson was called out to the hub; however, no disciplinary action was taken against him. Later, after I began the note to Corporel Metzler, he stopped by my cell and told me the watch sergeant ~~had~~ had rejected my move; and that all Corporal Metzler could do was fill out a formal move request and have both me and Mr. Johnson removed from the dorm. Sunday morning, I was in too much pain from my back for cleanup; Mr. Johnson angrily insisted I get up; and I screamed in agony trying to do back exercises to comply with his demand